# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3195-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.J.,

     Defendant-Appellant,

and

T.J. and A.P.,

     Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF T.J.
and O.P., minors.

_____

     Submitted January 19, 2021 – Decided February 12, 2021

     Before Judges Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0107-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Carol A. Weil, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor T.J. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor O.P. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Lynn B. Norcia, Designated Counsel, on the brief).

PER CURIAM

Defendant L.J. (Lilly) appeals from a March 27, 2020 judgment of guardianship terminating her parental rights to her children, T.J. (Tina), born in 2007, and O.P. (Owen), born in 2011.[1] We affirm, substantially for the reasons

---

[1] We use initials and pseudonyms to protect the privacy of the family. R. 1:38-3(d)(12).

2

stated by Judge Bernadette N. DeCastro in her comprehensive written opinion. We add these comments.

The evidence was discussed in detail in Judge DeCastro's opinion. We summarize the most significant facts here. In May 2018, the Division of Child Protection and Permanency (the Division) removed Lilly's children from her home after Tina arrived at school with visible injuries attributed to Lilly's physical abuse. Further investigation revealed Lilly frequently resorted to corporal punishment to discipline Tina and Owen, causing the children significant trauma. For the May 2018 incident, Lilly ultimately pled guilty to fourth-degree cruelty and neglect of children under N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3.

Beginning in June 2018, the Division referred Lilly for psychological and anger management services as well as for psychological and parenting evaluations. Dr. Richard Coco, who conducted a parenting evaluation of Lilly in October 2018, determined Lilly needed ongoing therapy, otherwise she would "continue to present a high risk of future abusive behaviors towards her children[.]" Lilly attended services initially, but was discharged in December 2018, and again in May 2019, following re-referral, for truancy. Following further evaluations and referrals in the summer and fall of 2019, Lilly began

attending domestic violence and parenting classes as well as psychotherapy and individual counseling sessions.

In October 2018, the court lifted its no-contact order, and the Division began facilitating visitation between Lilly and the children. Attendance at these visits varied, as the children sometimes declined to attend and Lilly was sometimes unable to attend. In May 2019, Lilly requested weekend visitation to accommodate her new work schedule. The Division offered alternate weekday time slots and attempted to find services which offered weekend visitation. However, because weekend visitation proved unavailable, Lilly declined to visit her children from May to November 2019, though she did have supervised phone calls with her children throughout this period. When she resumed visitation in November 2019, Lilly initially attended consistently but her attendance became sporadic in December and January.

The Division initially placed Tina and Owen with Owen's paternal grandparents, following their removal from Lilly's home. However, Owen's grandparents struggled with Tina's behavioral issues and requested the Division place Tina elsewhere. The Division considered multiple members of Tina's maternal family for a possible placement, but ultimately placed Tina with a non-relative resource family, where she remains today. Following medical and

psychological evaluations, the Division also enrolled both Tina and Owen in significant therapeutic services, which continued at the time of trial.

In July 2019, the Division proposed, and the court approved, a permanency plan for Tina and Owen, premised on the termination of Lilly's parental rights and the adoption of the children by their resource families. Judge DeCastro presided at the guardianship trial, held over four days in February and March 2020.[2]

At trial, Dr. Samiris Sostre, an expert in psychiatry, and Dr. Elizabeth Stilwell, an expert in psychology, testified for the Division. Dr. Sostre, who conducted a psychiatric evaluation of Lilly in January 2020, diagnosed her with personality disorder with narcissistic traits, which limited Lilly's ability to control her anger impulses, empathize with her children, and account for her actions. Dr. Sostre testified that since the Division became involved in May 2018, Lilly had done little to change her aggressive behavior towards her children, presenting an ongoing risk of harm to Tina and Owen.

Dr. Stilwell conducted psychological evaluations of Lilly and her children in October 2019 and bonding evaluations of Lilly, her children, and their

---

[2] The biological fathers of Tina and Owen voluntarily surrendered their parental rights, in February 2020, before trial began.

respective resources parents in January 2020. The expert opined that Lilly "continue[d] to be at-risk to engage in . . . high risk parenting practices" and Lilly's "belief in the utility of corporal punishment" remained unusually elevated. Dr. Stilwell recommended long-term psychotherapy but noted Lilly was unlikely to "utilize and . . . benefit from services in a meaningful way" based on the barriers presented by her personality disorder and the fact that she made only minimal gains from therapy and services in the past. Additionally, regarding the bonding evaluations, Dr. Stilwell found there was no secure bond between Lilly and her children, and they do not see Lilly as a primary attachment figure or a psychological parent; in contrast, Tina and Owen were securely attached to their resource parents, whom they viewed as psychological parents. Dr. Stilwell opined that both children would suffer significant loss and enduring harm if they were to be removed from their respective resource parents, and that Lilly was not capable of mitigating this harm.

Dr. Gerard Figurelli, an expert in psychology, testified for Lilly, having conducted psychological and parenting evaluations of Lilly in January 2020. Dr. Figurelli found Lilly was not experiencing a diagnosable psychiatric illness or substance abuse disorder that would present an impediment to her capacity to parent safety and adequately, which "was consistent with Dr. Sostre's finding[.]"

6

Additionally, Dr. Figurelli noted Lilly's consistent employment provides stability and support, enhancing "her capacity to be in a position to parent." However, Dr. Figurelli found Lilly lacked an adequate understanding of children's behaviors and development needs, ultimately concluding that she "was not able to parent consistently, safely and adequately at that point in time; that she needed additional services in order to be able to do so." He recommended significant services and reassessment in six months.

Chukwudera Egesionu, Lilly's therapist who had been treating her since August 2019, testified as a fact witness for Lilly. Mr. Egesionu indicated that Lilly had completed parenting skills and anger management treatment and was continuing with domestic violence therapy and other individual therapy sessions. He testified that Lilly has been receptive to and compliant with her counseling assignments, and that she "expressed willingness to do whatever she can" for her kids. However, his assessment of Lilly was based entirely on her self-reporting, as he never observed Lilly with either of her children and did not know the extent to which Lilly abused her children.

Tina appeared in camera, testifying that she did not want to return to living with her mother and that she hoped her resource mother would adopt her. The

A-3195-19

resource parents for both Owen and Tina testified they wanted to adopt the child in their care.

In a twenty-nine page opinion, which detailed the evidence presented at trial and the history of the family's involvement with the Division, Judge DeCastro found the Division satisfied all four prongs of the "best interests of the child" test, N.J.S.A. 30:4C-15.1(a).  Judge DeCastro found Lilly's criminal conviction for cruelty and neglect of children established the first prong, that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship."  N.J.S.A. 30:4C-15.1(a)(1).

Based on the expert testimony presented by both the Division and Lilly, Judge DeCastro found the Division proved the second prong, that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm[.]"  N.J.S.A. 30:4C-15.1(a)(2).  The judge referenced the opinions of the Division's experts, Dr. Stilwell and Dr. Sostre, who established that Lilly had not – and likely could not – eliminate the risk of harm she posed to her children, especially the harm that would result from severing the children's bonds with their resource families.  Judge DeCastro also cited the opinion of Lilly's expert, Dr. Figurelli, who testified that Lilly "is

not currently able to parent in a consistently safe and stable manner as she has not benefitted from services[,]" though she might "be able to parent in a safe and stable manner in the foreseeable future if she remains consistently engaged in the recommended services and if she is able to benefit sufficiently from those services." (emphasis in original). However, Judge DeCastro found, "there is no guarantee that [Lilly] will continue to attend services consistently or that she will benefit from those services[,]" based on Lilly's past engagement in services and the barriers to progress created by her personality and cognitive issues.

Judge DeCastro found the Division proved it "made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," establishing the third prong of the best interests test. N.J.S.A. 30:4C-15.1(a)(3). The judge detailed the Division's efforts to refer Lilly to various therapeutic services, coordinate visitation for the family, provide Lilly with transportation to services and visitation, and place Tina and Owen with relatives. Ultimately, Judge DeCastro found "by clear and convincing evidence that the Division exerted reasonable efforts" but that Lilly "failed to comply."

Finally, Judge DeCastro found the Division successfully proved the fourth prong, that the "[t]ermination of parental rights will not do more harm than

9

good." N.J.S.A. 30:4C-15.1(a)(4). The judge cited Dr. Stilwell's testimony and bonding evaluations, which established that,

> if either child were to be separated from their respective resource parents, they would suffer a significant loss that would produce enduring harm. A traumatic loss such as this is likely to bring about both negative short-term and long-term effects. [Lilly] is not capable of mitigating the harm that the children would experience if they were removed from their respective resource parents and she is unlikely to be able to do so in the foreseeable future. Both children would be well served by achieved permanency through adoption with their resource parents. The expert opined that the termination of [Lilly]'s parental rights to [Tina] and [Owen] would not do more harm than good.

The judge therefore found the Division met its burden of proving by clear and convincing evidence that termination of Lilly's parental rights will not do more harm than good. Since the Division established all four prongs of the best interests test, Judge DeCastro found it in the children's best interest to terminate Lilly's parental rights.

On appeal, Lilly contends the Division failed to prove prongs two, three, and four of the best interests test. She presents the following points of argument:

## LEGAL ARGUMENT

THE TRIAL COURT ERRED TO HOLD THAT DCPP MET ITS BURDEN TO SHOW TERMINATION OF LILLY'S PARENTAL RIGHTS WAS WARRANTED AND IN THE CHILDREN'S BEST INTERESTS.

10

### POINT I

THE TRIAL COURT ERRED BY TERMINATING THE MOTHER'S PARENTAL RIGHTS BECAUSE REASONABLE SERVICES UNDER PRONG THREE WERE NEVER PROVIDED; DCPP DID NOT PROVIDE HIGHLY SPECIALIZED THERAPY, REASONABLE VISITATION OR FAMILY THERAPY AS RECOMMENDED.

### POINT II

THE TRIAL COURT'S LEGAL CONCLUSION THAT DCPP HAD SATISFIED THE SECOND PRONG OF THE BEST INTERESTS TEST WAS ERROR.

### POINT III

THE JUDGMENT TERMINATING THE MOTHER'S PARENTAL RIGHTS MUST BE REVERSED BECAUSE DCPP FAILED TO PROVE THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD.

Our review of Judge DeCastro's decision is limited. We will not disturb a trial judge's factual findings so long as they are supported by substantial credible evidence. New Jersey Div. of Youth and Family Services v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's evaluation of witness credibility, and to her expertise in family court matters. Id. at 552-53; Cesare v. Cesare, 154 N.J. 394, 411-13 (1998).

A-3195-19

After reviewing the record with those standards in mind, we find no merit in any of Lilly's arguments concerning the four prongs of the best interests test. We are satisfied that Judge DeCastro's factual findings as to each prong are supported by substantial credible evidence in the record, and her thorough opinion amply addressed the issues. See R.G., 217 N.J. at 552.

The record shows the Division made reasonable efforts to provide services, facilitate visitation, accommodate Lilly's schedule and needs, and seek alternatives to reunification. Lilly's inability to eliminate the harm facing her children cannot reasonably be attributed to any alleged deficiency on the part of the Division. We therefore agree with Judge DeCastro that the Division proved all four prongs of the best interests test by clear and convincing evidence, and that terminating Lilly's parental rights is in Tina's and Owen's best interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3195-19